**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SBA Communications Corporation, et al., | No. CV-24-08230-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Navajo, et al., | |
| Defendants. | |

In July 2024, Plaintiffs SBA Communications Corp. and SBA Towers X, LLC (together, "SBA") applied to Defendant Navajo County for a special use permit to build a cell phone tower on a parcel of land near Snowflake, Arizona. While the application was pending, a group of Navajo County residents who suffer from electromagnetic hypersensitivity ("EHS") voiced opposition to the proposed tower on the ground that it would generate radio frequency ("RF") emissions that would have adverse effects on their health and on their property values. Although Navajo County denied the application in November 2024, it made clear that it was not relying on those individuals' asserted health concerns as the basis for its decision.

In this lawsuit, filed in December 2024, SBA argues that Navajo County violated the Federal Telecommunications Act of 1996 by denying the application. During the early stages of the case, Navajo County once again clarified that it did not intend to rely on its residents' asserted RF-related health concerns as the basis for its decision. The parties also requested, during the early stages of the case, a referral to a magistrate judge for the purpose

of conducting a settlement conference.

In August 2025, the parties participated in an all-day settlement conference, announced they were on the verge of a settlement, and asked the magistrate judge to schedule a follow-up session in two weeks to finalize the settlement. A few days before the follow-up session, however, a group of individuals who had previously voiced RF-related concerns regarding the proposed tower (hereinafter, "Proposed Intervenors") filed a Rule 24 motion to intervene. (Doc. 34.) Proposed Intervenors hope to intervene to block Navajo County from agreeing to allow the proposed tower to be built at the currently proposed location.

SBA and Navajo County oppose the intervention request on various grounds, including untimeliness. (Docs. 38, 39.) The intervention request is now fully briefed. (Docs. 38-42.) For the reasons that follow, the Court agrees that the request is untimely and denies it on that basis.

**RELEVANT BACKGROUND**

In July 2024, SBA filed an application with Navajo County for a special use permit to build a cell phone tower on a parcel of land near Snowflake, Arizona. (Doc. 1 ¶¶ 1, 42; Doc. 1-1 at 46-128.)

On November 25, 2024, following a series of public hearings, Navajo County denied SBA's application. (Doc. 1 ¶¶ 49, 53, 69, 108.) During those hearings (and in letters sent to Navajo County), a group of Navajo County residents who suffer from EHS expressed opposition to the proposed tower on the ground that it would generate RF emissions that would have adverse effects on their health and on their property values. (*Id.* ¶¶ 56-59, 65-66, 91-92.) However, Navajo County asserted in its denial letter that it had not relied on those residents' asserted health concerns as the basis for its decision. (*Id.* ¶¶ 110-11 ["The Denial Letter began with a disclaimer that the Board has not considered any comments, statements, or materials regarding adverse health concerns or effects related to RF emissions. Next, the Denial Letter provides five reasons for the denial."].)

In December 2024, SBA initiated this action, which seeks to challenge Navajo

County's denial of the application.  (Doc. 1.)[1]

On April 18, 2025, the parties filed the Rule 26(f) report.  (Doc. 18.)  In the Rule 26(f) report, Navajo County once again asserted that "[w]hile the public opposition to the tower included those who raised health concerns related to electromagnetic emissions, the County expressly did not consider those concerns in reaching its decision."  (*Id.* at 4.)

On April 30, 2025, during the case management conference, the parties asked that the case be referred to a magistrate judge for the purpose of conducting a settlement conference.  (Doc. 20.)  The Court made the requested referral.  (*Id.*)

That same day, the Court issued the scheduling order.  (Doc. 21.)  Among other things, the scheduling order set a deadline of September 16, 2025 to issue written discovery and a deadline of October 31, 2025 to complete fact discovery.  (*Id.* at 2.)

On August 25, 2025, a six-hour settlement conference took place.  (Doc. 33.)  "The parties made substantial progress toward a settlement agreement" and agreed to "continue settlement negotiations on Monday, September 8, 2025."  (*Id.*)

On September 4, 2025, Proposed Intervenors filed the pending motion to intervene.  (Doc. 34.)  Proposed Intervenors are individuals who expressed opposition to the proposed tower, during the proceedings in Navajo County, premised on the proposed tower's RF emissions.  (*Id.* at 5 ["When the Board held a public hearing on Plaintiffs' application, the Intervenors opposed the construction of the tower that would cause them immeasurable harm.  They submitted, among other things, letters from nearby homeowners attesting to the adverse impact the proposed tower would have on their disabilities."].)  Proposed Intervenors' purpose in seeking to intervene is to block Navajo County from agreeing to allow the proposed tower to be built at the currently proposed location given its proximity to their community.  (*Id.* at 16 ["Intervenors have an interest in ensuring that this action is not settled or determined in favor of SBA herein, or at least is not disposed of without their input."].  *See also id.* at 4 ["Intervenors do not seek to prevent the construction of the

_____

[1]    Defendants are Navajo County and the Navajo County Board of Supervisors.  For ease of reference, the Court will collectively refer to Defendants as "Navajo County."

proposed tower.  Rather, they seek to have it constructed at a safe distance from them."].)

On September 8, 2025, a seven-hour renewed settlement conference took place. (Doc. 36.)  "The parties reached a tentative settlement agreement," subject to approval by the Navajo County Board of Supervisors.  (*Id.*)

On September 9, 2025, the parties filed a joint motion to stay the case pending the approval decision.  (Doc. 35.)

On September 10, 2025, the Court denied the stay request without prejudice, explaining that it was "premature in light of the intervention request, which specifically argues that the putative intervenors should be allowed to join this action so they can prevent the parties from settling the action in a manner that would injure them.  The Court, to be clear, takes no position on the merits of the intervention request.  The point is simply that granting the parties' stay request right now would effectively result in the denial of the intervention request. The better course of action is to allow the intervention request to become fully briefed and then resolve it on the merits."  (Doc. 37 at 3.)

The motion to intervene is now fully briefed, with SBA and Navajo County both opposing it.  (Docs. 38-42.)  Nobody requested oral argument.

## DISCUSSION

I.    <u>Legal Standard</u>

"There are two types of intervenors.  Rule 24(a) identifies intervenors 'of right'—those persons who the court must let intervene.  Rule 24(b) identifies 'permissive' intervenors—those persons who the court may, but need not, let intervene."  1 Gensler, Federal Rules of Civil Procedure, Rules & Commentary, § 24:1 (2025).    Proposed Intervenors seek to intervene under both theories.

Intervention as of right is available to anyone who, "[o]n timely motion, . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  Courts in the Ninth Circuit employ a four-part test

when analyzing intervention of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted).  These requirements are broadly construed because "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* at 1179 (citation omitted).  That said, "[f]ailure to satisfy any one of the requirements is fatal to the application," and the Court "need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Permissive intervention, meanwhile, is available "[o]n timely motion" to "anyone . . . who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted).  "The district court is given broad discretion to make this determination." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

II.    Timeliness

The Court begins with the question of timeliness because it is dispositive.  "In determining whether a motion for intervention is timely, [courts] consider three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (cleaned up).  "In considering these

factors, courts must bear in mind that any substantial lapse of time weighs heavily against intervention." *Id.* (cleaned up). "[T]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation omitted). The same three timeliness factors apply to requests for intervention as of right and permissive intervention. *Wilson*, 131 F.3d at 1308. "In the context of permissive intervention, however, [courts] analyze the timeliness element more strictly than . . . with intervention as of right." *Id.*

    A.    **Stage Of The Proceeding**

    Proposed Intervenors' motion was filed nearly nine months after this case was initiated (Doc. 1), more than four months after the parties requested a referral to a magistrate judge for the purpose of conducing a settlement conference (Doc. 20), about a week and a half after the parties participated in a six-hour settlement conference and announced they were on the verge of reaching a settlement (Doc. 33), and only four days before the parties finalized their settlement during a seven-hour continuation of the settlement conference (Doc. 36). Courts have rejected, on untimeliness grounds, similar intervention requests. *See, e.*g., *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) ("[F]iling a motion to intervene . . . after the parties had come to an agreement following five years of litigation should weigh heavily against intervention . . . even [if] the agreement had not yet been officially approved by the district court."); *U.S. Commodity Futures Trading Comm'n v. Forex Liquidity LLC*, 384 F. App'x 645, 646-47 (9th Cir. 2010) (concluding that the "district court was well within its discretion when it found Gray's motion to intervene untimely" where the motion was filed after the receiver engaged in discovery and issued a proposed distribution plan); *Pike v. Nick's Eng. Hut, Inc.*, 2013 WL 150334, *2 (S.D. Ind. 2013) ("Society's motion was filed over a year after this lawsuit was filed . . . and only ten days before the original parties were prepared to meet at a settlement conference. . . . [A]fter considering the procedural history of this matter, Society's Motion is untimely."); *SER Techs., LLC v. Sauk*

*Valley Bank & Tr. Co.*, 2010 WL 2836990, *1 (N.D. Ill. 2010) (intervention request untimely where it came "well beyond the eleven months delay deemed untimely in [another case] and came on the eve of a settlement conference"). *See generally Rudisill v. Ryan*, 2017 WL 897797, *2 (D. Ariz. 2017) ("Motions to intervene may be found untimely in complicated litigation where the motion was not filed until after settlement. . . . The parties engaged in four separate settlement conferences and the complex terms of the agreement necessitated revision before the Stipulated Order was finalized. Renegotiation of this agreement would result in prejudice because a modification of the Stipulation would unravel the original settlement.") (citations omitted).

Moreover, although there was not much contested litigation activity in this case during the nine-month period before the intervention request was filed,[2] the settlement conference consumed 13 hours of the magistrate judge's time. Additionally, the intervention request was filed less than two weeks before the deadline for serving written discovery and less than two months before the deadline for completing fact discovery. (Doc. 21 at 2.) These considerations also suggest that the request came at an impermissibly late stage of the proceeding. *Compare Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*, 2017 WL 4769439, *1 (C.D. Cal. 2017) (concluding that "the motion to intervene was not timely" in part because it was filed "after discovery had closed") *with Sage Electrochromics, Inc. v. View, Inc.*, 2013 WL 6139713, *2 (N.D. Cal. 2013) (intervention timely where the case was "still in its relatively early stages" and the court had "not yet even . . . set a final case schedule").

Notwithstanding all of this, Proposed Intervenors assert in conclusory fashion in their motion that the "motion to intervene is timely because. . . the litigation is still in its beginning stages." (Doc. 34 at 7.) This assertion fails to address the reality that the motion was filed just as the case was about to settle (unfavorably to Proposed Intervenors) and just as written and fact discovery were about to close. *Cf. World Cleaners*, 2017 WL 4769439

---

[2]    The Court's involvement before the intervention request was not, to be clear, zero. During earlier stages of the case, the Court addressed a contested motion to strike Navajo County's jury demand (Docs. 15, 17, 20) and resolved various disputes in the Rule 26(f) report over case deadlines (Doc. 18 at 7-8).

at *1 ("A potential intervenor is not allowed to sit on its rights for the entire litigation to see how things turn out and then move at the late stages of the case for a 'do-over.'").  To their credit, Proposed Intervenors withdraw this assertion (which they attribute to a "proofing error") in their reply and instead seek to argue "that the delay in submitting this motion is forgivable."  (Doc. 40 at 2 & n.1.)  The Court will address the merits of that explanation in Part II.C *infra*.  For present purposes, all that matters is that the first factor weighs strongly against a finding of timeliness.

        B.    **Prejudice**

"Prejudice to existing parties is the most important consideration in deciding whether a motion for intervention is untimely."  *Smith*, 830 F.3d at 857 (cleaned up).  Intervention may be prejudicial to other parties where it "would complicate the issues and prolong the litigation," *United States v. Washington*, 86 F.3d 1499, 1504 (9th Cir. 1996), or where "a lot of water has passed under the litigation bridge."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004) (cleaned up).  However, prejudice cannot be based on "the fact that including another party in the case might make resolution more difficult."  *Smith*, 830 F.3d at 857 (cleaned up).

In their motion, Proposed Intervenors assert in conclusory fashion that "there would be no prejudice to the existing parties, since the Intervenors filed expeditiously after the Plaintiff sued, and the Court has conducted no proceedings or issued any substantive orders or rulings."  (Doc. 34 at 7.)  SBA disagrees, arguing it "will suffer significant prejudice" if intervention is allowed because "[t]he addition of the [Proposed] Intervenors will extend fact discovery, undo the settlement work achieved by the parties, delay SBA's ability to move for summary judgment, and deny SBA its statutory right to an expedited review of its claims."  (Doc. 38 at 9.)  Navajo County similarly argues that the "deadlines set in this case were carefully tailored by the Court to balance the discovery needed by the County, and Plaintiffs' statutory right to a prompt resolution of its Telecommunications Act claims.  The Motion to Intervene, if granted, will upend the schedule set for this case, and . . . seeks to undermine the efforts made between the parties to find a resolution in this case."  (Doc.

39 at 4.) Notably, Proposed Intervenors do not address (or dispute) any of these assertions in their reply—instead, Proposed Intervenors only attempt to explain why their delay was forgivable. (Doc. 40 at 2-4.)

The Court agrees with SBA and Navajo County that intervention would result in significant prejudice to the existing parties. SBA asserts claims under the Federal Telecommunications Act of 1996, a statute that requires "expedited" review. 47 U.S.C. § 332(c)(7)(B)(v) ("Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis."). To that end, SBA requested an aggressive case management schedule. (Doc. 18 at 9 ["Plaintiffs would prefer the Court hold a case management conference before issuing a scheduling order. 47 U.S.C. § 332(c)(7)(v) grants the right to expedited . . . review, so Plaintiffs would like to discuss an expedited schedule."].) Allowing intervention at this late stage of the case—where fact discovery is now closed—would upend the case management schedule and interfere with SBA's statutory right to expedited review.

C.     **The Reason For And Length Of The Delay**

In their reply, Proposed Intervenors offer an explanation for the late timing of their motion, which they deem "forgivable." (Doc. 40 at 2-4.) Proposed Intervenors contend that they initially intended to file their motion in May 2025, "around the same time that their counsel applied for admission *pro hac vice*," but then decided to delay filing their motion until their expert, Dr. Mattson, was able to complete her report. (*Id.*) According to Proposed Intervenors, "[i]t was well worth the investment of time." (*Id.* at 4.) Proposed Intervenors also contend that they attempted to participate in both of the settlement conferences but were not allowed to do so. (*Id.*)

The third factor weighs against a finding of timeliness. As noted, "[t]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing

parties." *Smith*, 830 F.3d at 854 (citation omitted).  There is a strong argument that Proposed Intervenors were aware, even before this litigation began, that Navajo County would not adequately protect their interests—Navajo County took pains, in the November 2024 letter explaining the denial decision, to distance itself from Proposed Intervenors' asserted health-related concerns.  (Doc. 1 ¶¶ 110-11.)  Indeed, Proposed Intervenors seem to acknowledge this point in their reply brief.  (Doc. 40 at 8 ["[T]he Intervenors' interests are not adequately represented by the County.  As set forth in the moving papers, the County stated on the record at the public hearing on SBA's application that it would not consider the health impacts the tower would inflict on Intervenors."].)  Nevertheless, Proposed Intervenors obtained the required awareness, at the latest, in April 2025, when Navajo County reiterated this position in the Rule 26(f) report.  (Doc. 18 at 4.)  Although Proposed Intervenors apparently began taking steps to intervene in the weeks following the submission of the Rule 26(f) report, as evidenced by their counsel's submission of a *pro hac vice* application in May 2025, they ultimately chose to delay the submission of their intervention request by another three-plus months because their expert was not yet done with her report.  This was not a compelling reason for the delay—Proposed Intervenors could have moved to intervene before their expert's work was complete—and the period of delay was lengthy, particularly given the statutory directive to provide expedited review. *Cf. FTC v. Cardiff*, 2020 WL 766336, *4 (C.D. Cal. 2020), *aff'd*, 830 F. App'x 844 (9th Cir. 2020) (delay of nearly two months after protected interest arose "weigh[ed] heavily in favor of a finding of untimeliness" and "[a]ny purported 'steps' taken during that time period are insufficient to justify" the delay).

> D.    **Balancing**

Because all three factors weigh against a finding of timeliness (particularly the first and second factors), the motion to intervene is untimely.

Given this determination, the Court "need not reach any of the remaining elements of Rule 24." *Wilson*, 131 F.3d at 1302 (citation omitted).  With that said, the Court notes that SBA and Navajo County also raise non-frivolous arguments as to whether Proposed

Intervenors have a significant protectable interest in light of *Wolf v. City of Millbrae*, 2023 WL 2134403 (9th Cir. 2023).  (Doc. 38 at 6-8; Doc. 39 at 4-6.)

Accordingly,

**IT IS ORDERED** that:

1.      The motion to intervene (Doc. 34) is **denied**.

2.      The parties shall meet and confer and then, within 14 days of the issuance of this order, file a joint notice with proposed updated case management deadlines for the Court's consideration.

Dated this 2nd day of December, 2025.

_____
Dominic W. Lanza
United States District Judge